## THOMPSON *v*. WHIPPLE.

Decided February 7, 1891.

*False imprisonment—City council—Ejection of member by order of mayor.*

　　The mayor of a city, as president of its council, has no inherent authority, according to the usages of deliberative bodies, to order a member to be forcibly excluded from a council meeting for disorderly or indecorous behavior which does not threaten personal injury nor arrest the progress of business. For the execution of such an order, he and the officer executing it will be responsible in an action for a false imprisonment.

.APPEAL from *Pulaski* Circuit Court.

JOSEPH W. MARTIN, Judge.

Action for assault and battery and false imprisonment. The court overruled a demurrer to the answer. Plaintiff rested and appealed. The substance of the answer is stated in the opinion.

*Compton & Compton* and *Blackwood & Williams* for appellant.

The council is a deliberative body, with certain well-defined legislative functions. They have the right to determine their own rules of procedure, etc. Mansf. Dig., sec. 806, 823. No statutory authority in the premises is conferred upon the mayor, beyond that to preside over the deliberations of the body (*ib.*, sec. 807); and if he had any such power as is exercised here, it must be conferred by the rules of the body itself, or arise inherently by virtue of his position under the general parliamentary law of the country. The powers and duties of the president of a deliberative body are summed up in Jefferson's Manual, sec. 18. See also Cushing, Par. Law, secs. 652-3, etc., 1765. The powers of parliamentary bodies are discussed in 103 U. S. 168. The case in 17 Wend., 522, is not in point. That was not a *deliberative* body, but a town meeting; and the justices were empowered by statute to see that the meeting was orderly and regularly conducted. 1 R. S. N. Y., secs. 11, 12; *ib.*, sec. 137.

*Eben W. Kimball* and *Morris M. Cohn* for appellees.

The mayor is the presiding officer of a body authorized to determine the rules of its proceedings; by ordinance "the president shall preserve order and decorum," etc. Mansf. Dig., secs. 806, 807; Digest of City Ordinances, 1882, pp. 51 and 58, rule 44. See also Jefferson's Manual, p. 163; Cush. Law and Pr. of Leg. Assemblies, secs. 290–1. The mode of proceedings is regulated by the *general rules* which govern *other* deliberative and legislative bodies. 1 Dillon, Mun. Corp., sec. 288. From these authorities it is obvious the mayor has plenary power to preserve order, and this power carries with it all powers necessary to its proper exercise, such as suppressing *disorder.* The case of 17 Wend., 522, seems to be directly in point, and justifies the action of appellee in this case. 1 Dillon, Mun. Corp., sec. 272, note 2. See 6 Am. Dec., 303; 18 *id.*, note 440.

HEMINGWAY, J. The answer admits the imprisonment of the plaintiff, and seeks to justify it. The defendants, Whipple and Botsford, were respectively the mayor and chief of police of the city of Little Rock, and the plaintiff was an alderman of the city. By virtue of their offices the plaintiff was a member of the city council, defendant Whipple its president, and defendant Botsford its executive officer. The circumstances of justification set up in the answer are that the plaintiff, at a meeting of the city council, "conducted himself in an unparliamentary, disorderly, boorish and insulting manner towards its presiding officer and the council;" that he addressed the council while in his seat, replied to a remark of the mayor in a disrespectful tone and manner, and asked "What are you going to do about it?"; that he kept his hat on his head during the meeting; and that, while retaining his seat, "in a loud and defiant tone" he seconded a motion that the mayor preserve order. Other like acts of disorder are alleged, and that plaintiff was called to order by the defendant Whipple, and admonished as to his misconduct; that he failed to observe the admonition and continued to be disorderly; that he was on

that account conducted out of the council chamber by the chief of police under an order from the mayor; that an ordinance of the city then in force authorized the mayor " to preserve order and decorum and to decide all questions of order, subject to an appeal to the council."

The legal sufficiency of the answer is the only question in the case.

The statute provides that the mayor shall be *ex-officio* president of the council, and shall preside at its meetings during the term for which he shall have been elected. Mansf. Dig., sec. 807.   It does not define the character or extent of his powers or duties as president of the council, but necessarily implies that they shall be such as are ordinarily incident to the position, and such as may be prescribed by any proper rules of procedure that the council shall adopt. Mansf. Dig., sec. 806.   The only rule of the council pleaded provides that " the president shall preserve order and decorum."   It does not define the means that the president may employ to preserve order and decorum, but leaves that subject to be determined by the usages that prevail in deliberative assemblies.   So that if the circumstances relied on justify the exclusion of plaintiff from the council chamber, it is because such authority is inherent in the office of president, according to the laws that regulate the proceedings of such bodies.   The ordinance is only declaratory of the common law; it neither in terms nor spirit increases or extends the duties or powers usually pertaining to the position.   What then are such duties and powers according to the general usages of deliberative bodies?   They comprise the duty and power to preserve order and decorum during the deliberations of the body. It is said to be the privilege of any member, and the special duty of the presiding officer, to take notice of any offense during deliberation, and to call the attention of the assembly to it.   In such cases the president declares to the assembly that a member named is guilty of irregular or improper conduct, and specifies it.   When it has been stated

False impris-
onment—Ejec-
tion of member
of city council.

by the president, the member is entitled to be heard in exculpation. The matter is thus fairly presented to the house for its consideration and action, pending which the member should withdraw. Delicacy and custom requires that he withdraw, in order that the matter may be fully discussed and considered, free from any restraints of his presence. If a sense of propriety does not constrain him to withdraw, the house may order that he do so; but his failure to do it is a matter for the action of the house. If the member disregards its order, the president may enforce it. Thus far and no further can we find that the president is authorized to order that a member be excluded. Cushing's Rules of Pro. and Deb., secs. 40 and 41, and Laws and Practice of Legislative Assemblies, sec. 664. When the president has called an offending member to order, and stated the matter of the offense to the house, it seems that he has fully discharged his duty and exhausted his power in the premises. He thereby transmits the further disposition of the matter to the house. The power to punish is not among his prerogatives; that belongs exclusively to the house, and he can never exercise it save as it is expressly ordered by the house. If he has other powers, the fact has escaped the recognition of writers. They treat him as the servant of the house, vested with powers to act in ordinary cases, but authorized only to execute the will of the house in unusual or extraordinary cases. It is said that the power of the speaker is well stated by Mr. Speaker Lenthall, who, when Charles I came into the house of commons and asked him whether any of five members that he came to apprehend were in the house, whether he saw them, and where they were, replied: "May it please your majesty, I have neither eyes to see, nor tongue to speak, in this place, but as the house is pleased to direct me, whose servant I am."

But it is argued that the president may enforce the exclusion of an offending member, not by way of punishment, but for the purpose of putting an end to existing disorder.

To sustain this view we are cited to the case of *Parsons* v. *Brainard*, 17 Wend., 522. The decision in that case was controlled by a statute of New York, and no reliance is placed by the opinion upon any principle of force out of that State.

Mr. Cushing says that, when in the course of proceedings a quarrel arises between members, which the speaker sees may lead to injurious results, it is his duty to interfere at once, without waiting for the previous order of the house, and, by means of a retraction or apology, compel such members to settle their quarrel immediately, or, by ordering them into the custody of the sergeant-at-arms, prevent them from leaving the house until they pledge themselves that the quarrel shall go no further; that the propriety of this course is more manifest where the members resort to violence. And that the speaker may, instead of proceeding at once, wait for the house to indicate such course as it may think proper; that in such cases immediate action by the speaker has been the rule in England, while the rule in this country has been to await the action of the house. Cushing's Law and Practice of Legislative Assemblies, sec. 666. It will be observed that the arrest is made in such cases to prevent the impending commission of personal violence, and to detain the offending member in the house to be dealt with by it after it has heard a statement of his offense and his statement in exculpation. Both reasons would be without force in a case of forcible exclusion for disorderly and indecorous behavior, not threatening personal injury; for there is no threatened violence to be prevented, and the exclusion of the member precludes a hearing and order of the house as to the offensive matter. Besides, when the president orders an arrest to prevent an injury being done to another member, he does no more than any other person would be justified in doing anywhere. We find no authority for the arrest of a member by order of the president, except as we have stated. If noise or tumult in the house, breaches of good order and decorum in the

course of proceeding, or an exhibition of disrespect and contempt for the president, would justify a forcible exclusion by him of an offending member, it cannot be that the history of proceedings in deliberative bodies would furnish no instance of the assumption of such power. Such history furnishes many instances of such offenses at times when feeling was more potent in the assembly than reason, and when the president, partially at least under its sway, did not decline the exercise of all his conceded powers; but if any president has ever thus sought to check raging disorder or command respect for his person, the instance is not called to our attention. As occasions for the exercise of such authority, if justified by usage, have often arisen, under circumstances favorable to its exercise, and as it does not appear to have been exercised on such occasions, we conclude that it does not exist.

It does not appear by the answer that plaintiff's conduct in the council meeting threatened personal injury to any of its members; therefore the case does not come within the rule referred to, that might authorize his arrest by the order of the mayor.

In the light of the answer, it appears that the council might have taken such action as it saw fit with reference to plaintiff's misconduct, without hazarding the personal security or safety of its members; it might then and there, upon presentation of the matter, have ordered his suspension or expulsion, if that was deemed necessary to stop or punish his misconduct. There was no such violence as to arrest the progress of business, or to require the exclusion of plaintiff, in order that his offense might be dealt with, His imprisonment was therefore unnecessary and illegal.

The judgment will be reversed, and the cause remanded, with directions to sustain the demurrer to the answer.