CASEY *v.* CASEY.

Opinion delivered February 16, 1920.

1. FALSE IMPRISONMENT—ACTS OF JUDICIAL OFFICERS.—Where a judicial officer has jurisdiction of the person and of the subject-matter, he is exempt from civil liability for false imprisonment so long as he acts within his jurisdiction and in his judicial capacity.

2. CORPORATIONS — FAILURE OF OFFICERS TO RECORD TRANSFER OF STOCK.—Kirby's Digest, section 859, as amended by acts 1909, page 643, declaring the failure of the president or secretary of a corporation to comply with the provisions of section 848 to be a misdemeanor, does not make the failure of such officers to comply with section 849, relating to the transfer of stock, likewise a misdemeanor, and hence bank officials who failed to record a transfer of stock are not liable to prosecution therefor.

3. CORPORATIONS—FAILURE OF OFFICERS TO PERFORM DUTIES.—Kirby's Digest, section 859, as amended by Acts 1909, page 643, providing that if the president or secretary of any corporation shall neglect, fail or refuse to comply with the provisions of section 848 "and to perform the duties required of them respectively," they shall be deemed guilty of a misdemeanor, etc., is, as to the clause quoted, too general to be operative.

4. FALSE IMPRISONMENT—LIABILITY.—Where a purchaser of bank stock employed the prosecuting attorney to compel bank officers to make a transfer on the bank's books of stock purchased by him, he is not liable for false imprisonment where, against his advice, the prosecuting attorney in his official capacity began criminal proceedings against such officers.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; affirmed.

### STATEMENT OF FACTS.

S. M. Casey instituted this action in the circuit court against Earl C. Casey, R. R. Case, and J. S. Handford, to recover damages for false arrest or false imprisonment and they seek to justify the same on the ground that it was legal.

The material facts are as follows: The Union Bank & Trust Company was at the time of the transaction complained of, engaged in the banking business at Batesville, Arkansas. D. D. Adams was president, and Charles D. Metcalf, secretary and treasurer, and Albert Sims and J. S. Handford were stockholders of the bank. Handford purchased some shares of stock from Albert Sims and asked the cashier to have the shares of stock transferred to him on the books of the bank. The cashier put him off and consulted with the president and with S. M. Casey, the attorney of the bank, and also one of its directors. Finally the officers of the bank declined to make the transfer, and Handford brought a suit in equity against the bank to compel the transfer on the books of the bank of the shares of stock so purchased by him. This suit resulted in a transfer of the shares of stock to Handford. At least the shares of stock were transferred before the suit was brought to trial. In the meantime Handford had consulted with Earl C. Casey, the prosecuting attor-

ney, and also a practicing lawyer. The object of the conference was to compel the bank to transfer the shares of stock to Handford. Earl C. Casey acted as the attorney for Handford in the equity suit to compel the transfer of the shares of stock, and also told Handford that the president and cashier of the bank and S. M. Casey, the attorney who advised them not to make the transfer, were all guilty of a misdemeanor under our statutes in refusing to make the transfer of the shares of stock.

Handford advised against any prosecution of the parties, but told Earl C. Casey that he left the matter in his hands as his attorney. Earl C. Casey filed before R. R. Case, a justice of the peace, the following information:

"State of Arkansas,

"County of Independence.

"I, Earl C. Casey, prosecuting attorney of the Third Judicial Circuit of Arkansas, state: That I have reasonable grounds for believing that Samuel M. Casey, C. E. Metcalf and D. D. Adams did on the 25th day of June, 1918, commit the crime of a misdemeanor, and prays a warrant for their arrest from R. R. Case, justice of the peace of Ruddell township. (Signed)

"Earl C. Casey."

Upon filing the information the justice of the peace issued warrants of arrest for Samuel M. Casey, C. E. Metcalf and D. D. Adams. The warrants were duly served by the sheriff, and the parties named were released upon their own recognizance. The arrests were made about dark one evening. The parties were notified to appear before the justice of the peace the next morning. At the hearing next morning the prosecuting attorney was permitted to amend his information by inserting the words, "by refusing to transfer stock certificates Nos. 193 and 194, capital stock, Union Bank & Trust Company, Batesville, Arkansas," after the words, "commit the crime of a misdemeanor." So that the information alleged that the parties named did on the 25th day of June, 1918, commit the crime of a misdemeanor by refusing to transfer stock certificates Nos. 193 and 194, capital stock,

Union Bank & Trust Company, Batesville, Arkansas, and prays a warrant for their arrest, etc.

On motion of the prosecuting attorney the cases were continued until another day. The defendants took a change of venue to another justice of the peace and their trial resulted in an acquittal.

At the conclusion of the testimony the court instructed the jury to return a verdict for the plaintiff, S. M. Casey against the defendants, Earl C. Casey and R. R. Case for such compensatory damages as it might find from the testimony resulted to him. The court also submitted to the jury the question of punitive damages under proper instructions.

The jury found for the plaintiff against the defendants, Earl C. Casey and R. R. Case. The jury found for the defendant, J. S. Handford. Judgment was rendered accordingly. The defendants, Earl C. Casey and R. R. Case, have appealed from the judgment rendered against them. The plaintiff, S. M. Casey, has appealed from the judgment rendered in favor of the defendant, J. S. Handford.

*Casey & Thompson* and *J. A. Watkins,* for appellants.

1. It is admitted that Earl C. Casey was prosecuting attorney and that the information was filed by him as prosecuting attorney. The information was in the form prescribed by Kirby & Castle's Digest, section 7842 and was filed by him before his co-appellant, a justice of the peace, and it was the duty of such justice to issue a warrant. The statute seems to leave the discretion of filing the information entirely within the belief of the prosecuting attorney and provides no tribunal or person to advise or direct him in the filing of the same. The case in 44 N. E. Rep. 1001, seems to cover every feature involved in this case. The prosecuting attorney therefore is a judicial officer in the sense of a judge of a court and exempt from all responsibility in an action or civil suit. Townshend on Slander and Libel (3 Ed.), § 227, pp.

395-6; 2 Gray 124; 18 C. J. 1318. But, if not judicial officers but private citizens, as J. S. Handford was, both malice and lack of probable cause *must be proved.* 63 Ark. 391; 81 *Id.* 422. The entire record shows the good faith and conduct of J. S. Handford in the purchase of · the Sims stock, nor was any malice shown in the conduct of Earl Casey. In the light of the entire record the conduct of the officers of the Union Bank & Trust Company and of their learned counsel was reprehensible.

2. Instruction No. 1 for plaintiff took from the jury all questions of fact relating to probable cause and malice and was contrary to law. 33 Ark. 316-321; 19 A. & E. Enc. Law, p. 635. Instruction D for appellant should have been given, and its refusal was error. *Supra.*

*Samuel M. Casey* and *Ira J. Mack,* for appellee.

1. Appellants have not complied with rule 9 and the appeal should be dismissed.

2. There is quite a difference between an action for false arrest and one for malicious prosecution. 64 Ark. 453-460. So far as Earl C. Casey and R. R. Case are concerned, the question is whether a prosecuting attorney can go before a justice and file an information or charge which states no offense known to the law, and the justice may thereupon issue a warrant of arrest upon such information, and the two (the prosecuting attorney and justice) thus have an arrest made and held for trial, without being liable in damages to the person arrested. See 22 Ark. 221.

In this case plaintiff was not charged with any offense known to the law and appellants who caused his arrest are liable for damages. R. R. Case, though a justice of the peace, was liable for this arrest. 12 A. & Eng. Enc. Law (2 Ed.) p. 700; 72 S. W. 336; 34 Ark. 174; 5 *Id.* 27; 13 *Id.* 380; 95 *Id.* 227; 12 A. & Eng. Enc. L. (2 Ed.), 744-751.

Earl C. Casey procured the warrant but went with the officer when the arrests were made and he was liable. *Ib.,* p. 758 and 754.

The whole proceedings against plaintiff were void. The information and writ did not describe the offense charged, which was necessary. Kirby & Castle's Digest, §§ 2669, 2688.

The instructions properly declare the law. 12 A. & E. Enc. Law (2 Ed.), 775-7; 60 Am. Rep. 396; 107 Am. St. 745; 19 Cyc. 327; 34 Ark. 174.

3. On the cross-appeal against Handford, the proof shows that Handford was the moving cause and *casus belli* of the whole trouble, the ringleader and arch-conspirator in the whole plot.

Instructions 3a and 4a are clearly the law and applicable to the facts. 135 Ark. 76. The verdict, even for punitive damages, was amply justified, because the malice of the prosecuting attorney is transparent, and the justice showed his bias and prejudice and was jointly liable.

HART, J. (after stating the facts). The question of the civil liability of a judicial officer for a false arrest or for false imprisonment has been much discussed both by courts and text writers. On the one hand the inviolability of personal liberty except under the forms of the law is involved, and, on the other, the dignity and independence of the judiciary should be considered. It has been frequently said that the general rule applicable to all judicial officers is that where the officer has jurisdiction of the person and of the subject-matter he is exempt from civil liability for false imprisonment so long as he acts within his jurisdiction and in his judicial capacity. This rule has been recognized by this court in several cases.

In the case of *Trammell* v. *Town of Russellville et al.*, 34 Ark. 105, it was held that one acting judicially in a matter within the scope of his jurisdiction is not liable in an action for his conduct. In the application of the rule it was held that the mayor in issuing a warrant in that case was not liable because he acted in a judicial capacity and within the scope of his jurisdiction. The court said

that the enforcement of the ordinances of the town was a duty imposed upon him by the statute and that the validity of the ordinance was a question he had the power to pass upon. Consequently he was held not liable in a civil action for false imprisonment, although the ordinance in which the arrest was made was held to be invalid.

In the case of *Vanderpool* v. *State,* 34 Ark. 174, which was a prosecution for the crime of false imprisonment under the statute, it was held that every judicial officer, whether the grade be high or low, must take care, before acting, to inform himself whether he has jurisdiction of the subject-matter and of the person of the defendant.

In *Thompson* v. *Whipple,* 54 Ark. 203, it was held that the mayor of a city, as president of its council, had no inherent authority, according to the usages of deliberative bodies, to order a member to be forcibly excluded from a council meeting for disorderly or indecorous behavior which does not threaten personal injury nor arrest the progress of business. Hence it was held that for the execution of such an order both the mayor and officer executing it were responsible in an action for false imprisonment.

Again in *McIntosh* v. *Bullard,* 95 Ark. 227, the court said that false imprisonment is a trespass committed against the person of another by unlawfully arresting and detaining him without any legal authority or by instigating such unlawful arrest. The court further said that it must be alleged that the arrest was without legal authority before an action can be founded upon it for false imprisonment. In the application of the rule the court held that where a justice of the peace is invested by law with jurisdiction over the subject-matter of an alleged offense, he should not be held liable in damages for an erroneous decision to a party who has been injured thereby.

This brings us to the question of whether the prosecuting attorney and the justice of the peace acted without jurisdiction in causing the arrest of the plaintiff. The

evidence does not show that the defendants entered into a conspiracy to do an unlawful act. From all that appears from the record, the defendants, Earl C. Casey and R. R. Case, supposed that their acts respectively in filing the information and in issuing the warrant were lawful. Their intention was to punish the parties named in the warrant for a violation of the statutes of the State. As we have already seen, a justice of the peace is protected against civil suits for any act done in a judicial capacity within the limits of his jurisdiction. In such a case the justice may act freely and fearlessly, even though his judgment may turn out to be erroneous. But when he acts without jurisdiction, he becomes liable for damages at the suit of the party unlawfully arrested and imprisoned.

In the case at bar the prosecuting attorney in his information charged that the plaintiff and other parties named therein had committed a misdemeanor and prayed a warrant for their arrest. The warrant of arrest was issued by the justice of the peace upon this information. Subsequently the prosecuting attorney obtained leave to amend his information to read that the plaintiff and the other parties named therein had committed the crime of a misdemeanor by refusing to transfer stock certificates Nos. 193 and 194, capital stock, Union Bank & Trust Company, Batesville, Ark. This shows that it was the intention to arrest the plaintiff for a violation of section 859 of Kirby's Digest as amended by act 222 of the Acts of 1909. See Acts of 1909, page 643. This section as amended is a part of an act to provide for the creation and regulation of incorporated companies approved April 12, 1869. Section 21 of that act as amended by the act of February 14, 1891, became section 859 of Kirby's Digest.

Section 21 reads as follows: ''If the president or secretary of any such corporation shall intentionally neglect or refuse to comply with the provisions of the twelfth section of this act, and to perform the duty required of them, respectively, the persons so neglecting

or refusing shall jointly and severally be liable to an action, founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

By the act of February 14, 1891, section 21, which had been named as section 980 of Manfield's Digest, was amended so as to leave out the word "intentionally" and to make the president or secretary liable for the neglect or refusal to comply with the provisions of section 971 of Mansfield's Digest, which corresponds with section 12 of the original act.

In Sandels & Hill's Digest the provisions of section 12 of the original act or 971 of Mansfield's Digest were divided into subdivisions by the digester and called sections 1337 and 1338. The word "as," which appears between the words "county clerk" and the word "aforesaid" in the original act, was left out by the digester. Section 1347, which corresponds with section 959 of Kirby's Digest, provides that if the president or secretary of any such corporation shall neglect or refuse to comply with the provisions of section 1337, etc., the person so neglecting shall be jointly and severally liable, etc. In Kirby's Digest, sections 1337 and 1338, are numbered as sections 848 and 849 and section 1347 is numbered as 859. In this latter section the digester only refers to section 848 and makes no reference to section 849. The section as amended by the Legislature of 1909 reads as follows: "Section 1. Section eight hundred and fifty nine (859) of Kirby's Digest of Statutes of Arkansas be amended to read as follows: Section 859. If the president or secretary of any such corporation shall neglect, fail or refuse to comply with the provisions of section 848 and to perform the duties required of them respectively, the person or persons so neglecting, failing or refusing, shall jointly and severally be liable to an action founded on this statute for all debts of such corporation contracted during the period of any such neglect or refusal, and shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum

not to exceed five hundred dollars ($500), and each and every day such person or persons shall so neglect to comply with the provisions of said section 848 or fail or refuse to perform said duties, shall constitute a separate offense.''

It is contended by counsel for the defendants that section 849 of Kirby's Digest makes it the duty of the president and secretary of the corporation to file with the county clerk a certificate of each transfer of stock and that, although section 849 is not referred to in Act 222 of the Acts of 1909, it was the intention of the Legislature to make the failure of the president and secretary to comply with the act in this respect a crime, and that therefore their act in arresting the plaintiff and the other parties named in the information and warrant was lawful. We can not agree with counsel in this contention. The Digests above referred to were compiled pursuant to authority conferred by the General Assembly. In making a digest, it is impractical for the digester to use the number of the sections in the original or amended acts, and he must necessarily adopt his own numbers for the various sections of his digest. For the purpose of this decision it does not make any difference whether or not section 959 of Kirby's Digest should have referred to both sections 848 and 849 instead of only section 848. The Legislature of 1909 had a right to amend the act as it saw fit, and properly referred to the sections of the digest then in official use in doing so. As we have just seen, the digester had divided section 12 of the original act into two subdivisions and called each subdivision a section of the digest. The Legislature must be presumed to have intended what the language used by it plainly and clearly means unless there is something in the act as amended to show a contrary intention. We can not ascribe to the Legislature any secret intention which is opposed to or contrary to the plain meaning of the words used. The act as amended by the Legislature of 1909 is plain and unambiguous. Under its terms it was only made a misdemeanor for the president and secretary to

fail or refuse to comply with the provisions of section 848. There is nothing to show that the Legislature intended that the provisions of the amendatory act should also apply to section 849. On the contrary, it plainly shows that it does not apply to section 849. The amendatory act of 1909 makes no reference whatever to section 849, and it can not be said that the omission to do so was due to inadvertence or mistake on the part of the Legislature. The framers of the amended act of 1909 must be presumed to have intended what their language plainly expresses. If the digester in section 859 had used the words, ''sections 848 and 849,'' and the amendatory act of 1909 had used the words, ''section 848,'' as it did use, it could not be said that the framers of the act left out the words, ''section 849,'' through inadvertence or mistake. As above stated, they did leave out the words ''section 849,'' and they must be presumed to have left them out intentionally; for there is nothing in the context to show otherwise.

It is also insisted that the words ''and to perform the duties required of them respectively,'' as contained in the amendatory act show that it was the intention of the Legislature to constitute the action of the president and the secretary in failing to file a certificate for the transfer of stock a crime. We can not agree with counsel in this contention. These words were contained in the act as originally passed. The provision with regard to the acts of the president and secretary in making the certificate of the transfer of stock is a part of section 12 of the original act. Section 21 is the section which has been amended and under which as amended the prosecution of the plaintiff was instituted. That section made the president and secretary liable for neglect or refusal to comply with the provisions of the twelfth section and the added words, ''and to perform the duties required of them,'' evidently refers to the duties specified in section 12. This is shown by section 863 of Kirby's Digest, which corresponds with section 24 of the original act and provides for the liability of the president, secretary and

directors for failure to perform their duties generally. Moreover, if these words should be construed to refer to the failure of the president and secretary generally to perform their duties and to constitute such acts a misdemeanor the act would be too general to be operative within the meaning of the rule in *Ex parte Jackson,* 45 Ark. 158. In that case the court held that a section of the digest making it a misdemeanor to "commit any act injurious to the public health or public morals, or the perversion or obstruction of public justice, or the due administration of the law," is unconstitutional and void for uncertainty.

Hence it is manifest that it is no crime for the president and secretary of a corporation to fail to file a certificate of the transfer of stock with the county clerk and the prosecuting attorney and justice of the peace were without jurisdiction respectively in filing the information and issuing a warrant of arrest against the plaintiff for a violation of the provisions of act 222 of the Acts of 1909.

The plaintiff has prosecuted an appeal from the judgment in favor of J. S. Handford, but there is nothing in the record upon which to predicate a reversal of the judgment in his behalf. The undisputed testimony shows that he had nothing whatever to do with instituting the proceeding for the arrest of the plaintiff, but on the contrary advised against it. His attorney was the prosecuting attorney of the district who proceeded on his own motion to have the plaintiff arrested upon information filed by himself in his official capacity. It turned out that the prosecuting attorney was mistaken in supposing that the matters charged against the parties constituted a crime under our statute, but Handford was not liable for his action in his official capacity.

It follows that the judgment in favor of Handford will be affirmed, and the judgment against Earl C. Casey and R. R. Case will also be affirmed.